# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**NELSON HERNANDEZ HERRERA,**

       **Petitioner,**

  **v.**                                **Case No. 25-CV-1994**

**SAM OLSON,** *et al.*,

       **Respondents.**

---

## DECISION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS

---

Nelson Hernandez Herrera, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Dodge County Detention Facility in Juneau, Wisconsin, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Habeas Petition, Docket # 1.) He argues that he is unlawfully detained in violation of the Immigration and Nationality Act ("INA") and his Fifth Amendment Due Process Rights and requests either a bond hearing or immediate release. (*Id.*) The Government has responded in opposition. (Docket # 8.) For the reasons set forth below, the petition for a writ of habeas corpus is granted.

## BACKGROUND

Herrera is a Columbian national who entered the United States without inspection on June 22, 2022. (Hab. Pet. ¶ 22.) He was briefly detained at the border and released into the United States around July 15, 2022, settling with his sister, partner, and nephew in Kenosha, Wisconsin. (*Id.*) On September 23, 2025, Herrera was arrested by the Department of Homeland Security ("DHS") at a routine check-in appointment with ICE. (*Id.*)

DHS conducted credible fear interview proceedings and Herrera conceded that Respondents were permitted to detain him. (*Id.* ¶ 24.) After passing the credible fear screening, DHS placed Herrera in removal proceedings pursuant to 8 U.S.C. § 1229a and served him with a Notice to Appear before an Immigration Judge ("IJ"). (*Id.*; Docket # 1-3.) Herrera was charged with being present in the United States without a valid entry document. (Hab. Pet. ¶ 24.) Herrera had previously filed for asylum and was waiting for an interview on that application. (*Id.* ¶ 25.)

Herrera filed a motion for bond with the Chicago Immigration Court. (*Id.* ¶ 26.) On December 16, 2025, the IJ denied the motion, writing that he lacked jurisdiction to grant bond to aliens present in the United States without admission. (Docket # 1-5.) Herrera remains detained at the Dodge County Detention Facility.

## ANALYSIS

In immigration-related proceedings, the Supreme Court has recognized 28 U.S.C. § 2241 petitions as a forum for statutory and constitutional challenges to detention orders. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). This authorizes federal courts to grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3). In determining whether to grant such relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. §§ 2246–2247.

The central question presented is one of statutory interpretation: whether Herrera is subject to mandatory detention under 8 U.S.C. § 1225(b) while his removal proceedings are pending as Respondents argue, or whether he is subject to discretionary detention and is entitled to a bond hearing under 8 U.S.C. § 1226(a), as he contends.

2

In cases of statutory construction, courts begin with "'a careful examination of the ordinary meaning and structure of the law itself.'" *Nawara v. Cook Cnty.*, 132 F.4th 1031, 1035 (7th Cir. 2025) (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019)). If "that examination yields a clear answer," the inquiry ends. *Id*. For where the statutory language is plain, the court's sole function "'is to enforce it according to its terms.'" *Id*. (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). Thus, I begin with the relevant statutes.

  *1. Statutory Framework*

  Both 8 U.S.C. §§ 1225 and 1226 cover civil detention of noncitizens pending removal proceedings. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. Subsection (a) concerns "inspection" and provides that all "aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). In relevant part, the section defines an "applicant for admission" as an alien present in the United States who has not been admitted or who arrives in the United States. § 1225(a)(1).

  Subsection (b) of § 1225 covers "inspection of applicants for admission" and provides for mandatory detention and expedited removal proceedings for certain types of applicants. Generally, noncitizens deemed inadmissible due to fraud or documentation issues are removed without further hearing unless the noncitizen indicates an intention to apply for asylum or a fear of persecution. § 1225(b)(1)(A)(i). Pursuant to § 1225(b)(1), if the noncitizen applies for asylum or a fear of persecution, they are referred for an asylum interview. § 1225(b)(1)(A)(ii). If the examining officer determines that the noncitizen has a credible fear

of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). If the noncitizen is not found to have a credible fear of persecution, the noncitizen "shall be detained" until removed. § 1225(b)(1)(B)(iii)(IV).

As relevant here, § 1225(b)(2) is broader and "applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). The statute provides:

> Subject to paragraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding].

§ 1225(b)(2)(A). In short, § 1225 provides for mandatory detention and expedited removal proceedings for applications for admission seeking entry into the United States. *Jennings*, 583 U.S. at 289.

Section 1226 is titled "Apprehension and detention of aliens." 8 U.S.C. § 1226. Subsection (a) states:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on --
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > >
> > > (B) conditional parole; but
> >
> > (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or

4

otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a). In sum, § 1226(a) allows the Attorney General to issue warrants for the arrest and detention of noncitizens pending a decision on their removability and to either continue the detention of the arrested noncitizen or release them on bond or parole. *See id*. Section 1226(b) provides that the Attorney General, at any time, may revoke a bond or parole granted under subsection (a), rearrest the noncitizen under the original warrant, and detain the noncitizen. § 1226(b).

Finally, § 1226(c) requires that the Attorney General take into custody noncitizens who are inadmissible or subject to removal for a variety of criminal offenses. Recently, this section was amended by the Laken Riley Act to require the detention of noncitizens arrested for any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer, as well as any crime that results in death or serious bodily injury to another person. *See* § 1226(c)(1)(E)(ii). Aliens who are subject to mandatory detention under this section may only be paroled or released for witness protection purposes. § 1226(c)(4).

2.      *Application to this Case*

Herrera alleges he is entitled to the discretionary detention authority of § 1226(a) because § 1225(b)(2)(A)'s mandatory detention provision only applies to noncitizens "seeking admission" into the country at the border or a port of entry. He argues that Respondents' reliance on § 1225 to mandate detention for noncitizens like him who are already within the United States and have resided here for years is contrary to the statutory text, decades of agency practice, and congressional intent.

Respondents argue that because Herrera was never lawfully admitted into the United States, he meets the definition of "applicant for admission"—a noncitizen present in the

5

United States who has not been lawfully admitted—and therefore is subject to mandatory detention under § 1225(b)(2)(A). Respondents further argue that its position is supported not only by the statutory text but by the legislative history of the INA.

Judges in this district have come out on both sides of the debate. *See Ramirez Valverde v. Olson*, No. 25-CV-1502, 2025 WL 3022700, at *4 (E.D. Wis. Oct. 29, 2025) (concluding petitioner was not subject to § 1225's mandatory detention provision because he was not an "alien seeking admission"), *appeal filed*, No. 25-3316; *Ugarte-Arenas v. Olson*, No. 25-CV-1721, 2025 WL 3514451, at *3 (E.D. Wis. Dec. 8, 2025) (concluding petitioner met the definition of "applicant for admission" as a noncitizen present in the United States that has not been admitted), *appeal filed*, No. 26-1023.

In *Cirrus Rojas v. Olson*, No. 25-CV-1437, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), the court found Respondents' interpretation more consistent with the plain text of § 1225. Viewing the statute as a whole, the court did not find a basis for excluding noncitizens that are unlawfully present in the United States from the statute's unambiguous definition of "applicant for admission." *Cirrus Rojas*, 2025 WL 3033967 at *8. The court was also not persuaded that § 1225's mandatory detention provision only applied to noncitizens "seeking admission" into the country that are detained at the border. *Id.* Instead, the court considered "seeking admission" as an alternative way of referring to an "applicant for admission." *Id.* The court further reasoned that upon apprehension, most noncitizens seek admission and permission to stay, undermining the petitioner's interpretation. *Id.*

Petitioner also argued, as Herrera does here, that passage of the Laken Riley Act suggests that noncitizens that are not lawfully admitted are not governed by § 1225 because if they were, enacting the Laken Riley Act to mandate detention for noncitizens that were

already subject to mandatory detention would be redundant. *Id.* at *9. The court disagreed, finding 2025 legislation of little importance in interpreting legislation enacted in 1996. *Id.* The court was also unpersuaded by DHS's history of applying § 1226 to noncitizens detained within the country. Instead, it chose to adopt the most natural reading of the statute as set forth above. *Id.*

Another court in this district, however, rejected Respondents' interpretation, instead finding § 1225's use of the present tense and reference to "arriving aliens" as indicating the statutory scheme applies to noncitizens actively traveling into the United States and not to noncitizens that already reside within the country. *López de la Cruz v. Schmidt*, No. 25-CV-1562, Docket # 18 (E.D. Wis. Nov. 19, 2025). The court reasoned that Congress' inclusion of the term "seeking admission" in the mandatory detention provision of § 1225(b)(2)(A) was not a mere alternate phrase; rather, it clarified Congress' intent to limit mandatory detention to a subset of "applicants for admission"—those that are "seeking admission." *Id.* at 10. And in the broader context of § 1225's usage of present tense, exceptions for stowaways and crewman, and reference to modes of transportation, the court concluded that § 1225(b)(2)(A) must only apply to noncitizens presently or recently entering the United States. *Id.* at 9–11.

The court further reasoned that § 1226's longstanding application—for nearly thirty years and across five presidential administrations—to noncitizens that are detained within the country suggests Respondents are likely now misinterpreting and misapplying the law by subjecting those same noncitizens to mandatory detention under § 1225. *Id.* at 11–12. Moreover, the court found Respondents' position superfluous when considering the recent enactment of the Laken Riley Act. *Id.* at 12.

Both of these decisions, however, predate the Seventh Circuit's recent decision in *Castañon-Nava v. United States Dep't of Homeland Sec.*, 161 F.4th 1048, 1050–1063 (7th Cir. 2025). In *Castañon-Nava*, on a motion to stay, DHS and ICE argued, as Respondents do here, that ICE could detain noncitizens arrested in the Midwest pursuant to the mandatory detention authority authorized by § 1225(b)(2)(A) because such noncitizens are considered "applicant[s] for admission." *Id.* at 1060–61. The Seventh Circuit rejected the government's argument, finding its interpretation of § 1225 likely to fail on the merits. *Id.* at 1061. In reviewing the statutory text, the Seventh Circuit recognized that although a noncitizen arrested in the Midwest may meet the definition of "applicant for admission" because they are a noncitizen "present in the United States who has not been admitted," the mandatory detention provision limited its scope to "applicant[s] for admission" who are "seeking admission." *Id.*; *see* § 1225(b)(2)(A). In other words, § 1225 authorizes the detention of "certain aliens *seeking admission* into the country," while § 1226 authorizes "the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Castañon-Nava*, 161 F.4th at 1061 (internal quotation omitted) (quoting *Jennings*, 583 U.S. at 289) (emphasis in original). The Seventh Circuit reasoned that this "difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Castañon-Nava*, 161 F.4th at 1061; *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.").

Respondents urge the Court to disregard *Castañon-Nava* as non-binding authority. Indeed, I note that in a recent decision from this district, the court declined to treat *Castañon-*

*Nava* as binding precedent given its preliminary nature. *Espinoza Hernandez v. Olson*, 2026 WL 161509, at *6 (E.D. Wis. Jan. 21, 2026). And though I appreciate the decision's procedural posture, the Seventh Circuit's rationale provides useful guidance on the interplay of the two statutory schemes that cannot be ignored. As such, I accord the Seventh Circuit's reasoning substantial weight. *Moralez Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663–64 (2025) (Gorsuch, J., concurring in part and dissenting in part) (citations omitted) (stating that "decisions regarding interim relief are not necessarily 'conclusive as to the merits' because further litigation may follow[,]" but its 'reasoning—its *ratio decidendi*'—carries precedential weight in 'future cases'")).

Accordingly, following the Seventh Circuit's reasoning in *Castañon-Nova*, I find that given that Herrera has been in the United States since 2022, his detention is governed by § 1226(a)'s discretionary detention framework and not the mandatory detention provision of § 1225(b). Thus, Herrera is entitled to a bond hearing under § 1226(a).

 *3. Due Process*

Because I find Herrera's detention under 8 U.S.C. § 1225 violates the INA, I do not address whether his continued detention violates due process.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Herrera's petition for a writ of habeas corpus (Docket # 1) is **GRANTED**. Respondents are **ORDERED** to provide Herrera with a bond hearing under 8 U.S.C. § 1226(a) before an Immigration Judge by **February 6, 2026**.

**IT IS FURTHER ORDERED** that the parties provide the Court with a joint status report informing the Court of the status of Herrera's bond hearing.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 28th day of January, 2026.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge